UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

BENNETT WAYNE SIPES et al.,

        Plaintiffs,                   Case No. 2:08-cv-213

v.                                     Honorable R. Allan Edgar

BARBARA S. SAMPSON et al,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by state prisoners pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiffs leave to proceed *in forma pauperis*, and Plaintiffs have paid the initial partial filing fee.[1] Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs action will be dismissed for failure to state a claim.

---

[1] The Court notes that not all Plaintiffs have signed the Amended Complaint (docket #15). However, each Plaintiff signed the original complaint (docket #1) and has paid his portion of the filing fee. Plaintiff Sipes has also submitted an affidavit as a "proxy to signing the filed complaint." (Docket #17.) Therefore, the Court will address the Amended Complaint as if signed by all four Plaintiffs.

**Discussion**

I.     Factual allegations

Plaintiffs Ronald Grandchamp and Dale Denton are both incarcerated at Hiawatha Correctional Facility. Plaintiffs Bennett Sipes and Douglas Henry have both been released on parole. Plaintiffs sue the following members of the Michigan Parole Board: Barbara Sampson, Laurin Thomas, James Quinlan, James Atterberry, George Lellis, Charles Braddock, Miguel Berrios, John Rubitschun, Enid Livingston, Marianne Samper, Stephen DeBoer, Artina Hardman, Anthony King, David Kleinhardt, Charles Brown, Paul Condino, Jodi DeAngelo, David Fountain, Lisa Gettys and John Sullivan.

Plaintiffs allege that Defendants violated their Due Process rights by making "deliberate and capricious" departures from the parole guidelines. (Am. Compl. at 3, docket #15.) Plaintiffs Henry and Sipes additionally allege that their constitutional rights have been violated by being forced to pay for and wear a GPS transmitter at all times as a condition of their parole. (*Id.* at 4.) Plaintiffs seek injunctive and monetary relief. (*Id*. at 5.)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Properly brought as Habeas Corpus Petition

At the time Plaintiffs filed suit, all Plaintiffs were in the custody of the Michigan Department of Corrections (MDOC). Plaintiffs Grandchamp and Denton were incarcerated with the MDOC and Plaintiffs Sipes and Henry were parolees in the custody of the MDOC. *See Jones v. Cunningham*, 371 U.S. 236 (1963); *DePompei v. Ohio Adult Parole Authority*, 999 F.2d 138, 140 (6th Cir.1993); *Jones v. Department of Corrections*, 468 Mich. 646, 652, 664 N.W.2d 717 (2003) (a paroled prisoner remains in the legal custody and under the control of the MDOC pursuant to

M.C.L. § 791.238(1)). Plaintiffs Sipes' and Henry's challenge to their parole conditions are tantamount to a challenge to their confinement.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiffs Grandchamp and Denton do not seek release from prison; rather, they request a new parole hearing. As a consequence, under *Wilkinson*, their success in the action would not necessarily demonstrate the invalidity of their continued confinement, so his action does not appear to be *Heck-*

barred. Nevertheless, assuming that Plaintiffs Grandchamp and Denton's action is cognizable under § 1983, it fails to state a claim as set forth herein.

B.      *No Liberty Interest in Parole*

Plaintiffs Sipes, Grandchamp, Denton and Henry allege that Defendants violated their due process rights by making "deliberate and capricious" departures from the parole guidelines. (Am. Compl. at 3.) To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir.2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiffs fail to raise a claim of constitutional magnitude because they have no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805,

806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held that the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See*

*Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board"). Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. *Carnes*, 76 F. App'x at 80.

Until Plaintiffs have served their maximum sentence, they have no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiffs fail to state a claim for a violation of their procedural due process rights.

### C. *Conditions of Parole*

Plaintiffs Henry and Sipes additionally allege that their constitutional rights have been violated by being forced to pay for and wear a GPS transmitter at all times as a condition of their parole. (Am. Compl. at 4.) Plaintiffs Henry and Sipes state that the monitoring system includes telephone calls from the MDOC between the hours of midnight and 6:00 a.m. They asserts that these calls "threaten the safety of those who work on heights, ladders, heavy or farm equipment" because they disturb the sleep of those being monitored who work in dangerous occupations. (*Id.*) Plaintiffs Sipes and Henry further allege that the GPS monitoring program, including the early morning calls, constitutes torture. (*Id.*)

As an initial matter, Plaintiffs Sipes' and Henry's claims assume that they have the right to parole regardless of the conditions set by the Parole Board. This is not the case. As

discussed above, Plaintiffs have neither an inherent constitutional right to parole nor a protected liberty interest created by state parole laws. See *Greenholtz,* 442 U.S. at 11; *Sweeton*, 27 F.3d at 1164-65; *Bullock v. McGinnis*, 5 Fed. Appx. 340, 342 (6th Cir.2001). Moreover, even assuming that Plaintiffs Sipes and Henry have a liberty interest in the conditions of their parole, the GPS monitoring does not violate their constitutional rights.

The United States Supreme Court made clear in *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) that "the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system." The Court stated that "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* It recognized that "a convict may not be entitled to the full range of rights accorded other citizens, and the government may impose upon the parolee certain conditions of liberty which would be unconstitutional if applied to ordinary individuals." *Carchedi v. Rhodes*, 560 F.Supp. 1010, 1015 (D.C. Ohio 1982) (citing *Morrissey*, 408 U.S. at 478). The Court has also repeatedly acknowledged that a State has an "'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.'" *Samson v. California*, 547 U.S. 843, 853 (2006) (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998)) (explaining that the interest in combating recidivism "is the very premise behind the system of close parole supervision"); *see also Samson*, 547 U.S. at 853 ("[A] State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.") (citing *Griffin v. Wisconsin*, 483 U.S. 868, 879 (1987); *U.S. v. Knights*, 534 U.S. 112, 121 (2001)).

According to the Offender Tracking Information System (OTIS), Plaintiff Sipes has active convictions for absconding or forfeiting bond, MICH. COMP. LAWS § 750.199a, and three convictions for second-degree criminal sexual conduct with a person under the age of 13, MICH. COMP. LAWS § 750.520c.[2] Plaintiff Henry has an active conviction for second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c.[3] The Court finds that the requirement to wear and pay for a GPS monitor is reasonably and necessarily related to help rehabilitate Plaintiffs Henry and Sipes while also protecting society from any recidivist tendencies they may have.

Furthermore, to the extent that Plaintiffs Sipes and Henry assert violations of the Eighth Amendment, and assuming that the Eighth Amendment even applies to parolees, their claim fails. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). The requirement to wear a GPS monitor and receive phone calls during the early morning is certainly less restrictive or disruptive of Plaintiffs' liberty than

---

[2]*See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=271473

[3]*See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=489553

confinement in prison. Therefore, since the mere fact of incarceration does not violate the Eighth Amendment, the condition of parole to wear and fund a GPS monitoring system does not either.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiffs action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If they are barred, they will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 8/13/09               /s/ R. Allan Edgar
                             R. Allan Edgar
                             United States District Judge